UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

SHIRLEY J. JEFFREYS,                        )
(Social Security No. XXX-XX-4643),          )
                                            )
                        Plaintiff,          )
                                            )
             v.                             )        3:08-cv-14-WGH-RLY
                                            )
MICHAEL J. ASTRUE,                          )
COMMISSIONER OF SOCIAL SECURITY,            )
                                            )
                        Defendant.          )

## MEMORANDUM DECISION AND ORDER

This matter is before the Honorable William G. Hussmann, Jr., United

States Magistrate Judge, upon the Consents filed by the parties (Docket Nos. 10,

29) and an Order of Reference entered by District Judge Richard L. Young on

March 4, 2009.  (Docket No. 30).

## I.  Statement of the Case

Plaintiff, Shirley J. Jeffreys, seeks judicial review of the final decision of

the agency, which found her not disabled and, therefore, not entitled to

Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act").

42 U.S.C. §§ 416(i), 423(d); 20 C.F.R. § 404.1520(f).  The court has jurisdiction

over this action pursuant to 42 U.S.C. § 405(g).

Plaintiff applied for DIB on November 19, 2004, alleging disability since

April 7, 2003.  (R. 51-55).  The agency denied Plaintiff's application both initially

and on reconsideration.  (R. 37-39, 41-44).  Plaintiff appeared and testified at a

hearing before Administrative Law Judge William Hafer ("ALJ") on May 2, 2007.

(R. 236-61).  Plaintiff was represented by an attorney; also testifying was a

vocational expert.  (R. 236).  On June 11, 2007, the ALJ issued his opinion

finding that Plaintiff was not disabled because she retained the residual

functional capacity ("RFC") to perform her past relevant work.  (R. 10-19).  The

Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision

as the final decision of the Commissioner.  (R. 2-4).  20 C.F.R. §§ 404.955(a),

404.981.  Plaintiff then filed a Complaint on January 23, 2008, seeking judicial

review of the ALJ's decision.

## II.  Statement of the Facts

### A.  Vocational Profile

Born on April 17, 1953, Plaintiff was 54 years old at the time of the ALJ's

decision, with a high school education.  (R. 242).  Her past relevant work

experience included employment as a floor clerk at K-Mart.  (*Id.*)

### B.  Medical Evidence

#### 1.  Crohn's Disease

On March 14, 2000, Plaintiff underwent an exploratory laparotomy with

resection of her terminal ileum and ascending colon with ileum to hepatic flexure

anastomosis, secondary to Crohn's regional ileitis.  (R. 182).

A colonoscopy that was performed on February 21, 2002, showed "some

superficial erosion, very typical of Crohn's disease.  There is some inflammation

here as well.  There is also now noted more inflammation at the anastomotic site, typical of Crohn's."  (R. 179).

On October 17, 2002, Kerry Newman, M.D., saw Plaintiff for follow-up on her Crohn's disease and noted that "[s]he is doing very well."  (R. 141).  Dr. Newman explained, "Sometimes, she gets a little bit of loose stools.  She will take an extra dose [of Questran] and that seems to keep it in check."  (R. 141).

Plaintiff was seen by Dr. Newman on May 26, 2004, for a suspected partial obstruction of her bowels; he noted that Plaintiff has "done extremely well" since her surgery in 2000.  (R. 174).  Dr. Newman examined Plaintiff again on August 12, 2004.  (R. 132).  Plaintiff suggested that she might have been obstructed because of Chinese food that she had eaten, and Dr. Newman opined that Plaintiff needed to stay on softer foods.  (R. 132).  He suggested a colonoscopy or surgery if she continued to get obstructed, but explained that "right now she is doing pretty well."  (R. 132).

On December 10, 2004, Plaintiff was seen by Dr. Newman.  (R. 131).  He noted Plaintiff's May 2004 hospitalization for an obstruction.  (R. 131).  He opined that Plaintiff might need a colonoscopy; her alternatives were a liquid or blenderized diet or perhaps more surgery down the road.  (R. 131).

On April 13, 2005, Bruce Schneider, M.D., noted that Plaintiff "does have some chronic loose stools at times."  (R. 115).  Plaintiff still suffered from intermittent re-obstruction of her bowels.  (R. 115).  Dr. Schneider recommended an endoscopic balloon dilation which Plaintiff chose to undergo.  (R. 115).

Plaintiff underwent the procedure on April 27, 2005, and there was no evidence of obstruction.  (R. 117).  The procedure did show a history of Crohn's disease, and Dr. Schneider noted that there "did appear to be active disease with exudative material, inflammation, and edema in the distal ileum."  (R. 118).

Dr. Schneider examined Plaintiff on July 25, 2005.  (R. 113).  Plaintiff only had two or three loose stools a day and was clinically doing well otherwise.  (R. 113).  Dr. Schneider did schedule a follow-up because of the continued risk of obstruction in the future.  (R. 113).

On January 30, 2006, Plaintiff presented to Dr. Schneider for a two-month check-up.  (R. 112).  Plaintiff had well-formed stools and no complaints of abdominal pain.  (R. 112).  Dr. Schneider reported that Plaintiff's Crohn's disease was stable.  (R. 112).

On July 27, 2006, Dr. Schneider noted that Plaintiff has had only occasional flaring of her Crohn's disease but had been for the most part doing fairly well; she did, however, report "chronic loose stools since her surgery" with "some breakthrough frank watery diarrhea."  (R. 99).  Plaintiff reported that her diet, including fatty foods and salads, had aggravated her diarrhea.  (R. 99).  Dr. Schneider recommended no changes except a change to WelChol tablets and an increase in intake of fiber.  (R. 99).

On August 11, 2006, Plaintiff presented to Michael T. Myers, M.D., for a complete physical exam.  (R. 92).  Plaintiff's only complaint was allergies and

some "sleep issues." (R. 92).  Dr. Myers prescribed a nasal spray and Ambien.
(R. 92).  Otherwise, Dr. Myers noted that Plaintiff had no complaints.  (R. 92).

On January 25, 2007, Plaintiff was seen by Dr. Schneider for follow-up on
her Crohn's disease.  (R. 98).  A "small bowel series report" indicated that
Plaintiff's condition "has significantly improved from last study on April 27,
2005." (R. 98).  Plaintiff was taking Imuran and WelChol for her Crohn's, and
Dr. Schneider reported that "clinically she seems to be doing well.  There are no
signs of obstruction."  He noted that a follow-up would be needed in one year
with CBC and liver studies checked every three months.  (R. 98).

On April 17, 2007,  Dr. Myers filled out a Physical Capacity Evaluation
providing his opinion concerning Plaintiff's RFC.  Dr. Myers felt she could stand
less than 20 minutes on a consistent basis, walk less than ten minutes on a
consistent basis, lift less than ten pounds on a consistent basis, and carry less
than ten pounds.  (R. 103).  He further felt that she would miss three or more
days per month due to her medical problems and would need to leave early from
the workplace three or more days per month.  Plaintiff would also need more
than one extra break per day due to "frequent bathroom breaks" and that as a
combination of all the problems she would have more than three days per month
when she would not stay focused for at least seven out of eight hours.  (R. 103).

## 2.  Depression and Anxiety

On January 11, 2005, Plaintiff was examined at the request of the SSA by
Dr. William Weiss, Ph.D. a clinical psychologist.  (R. 187-91).  Dr. Weiss found

that Plaintiff suffered from "the diagnostic criteria associated with mood disorder

due to Crohn's disease" with the following depressive features:

> A.  A prominent and persistent disturbance in mood predominates
> in the clinical picture and is characterized by depressed mood
> B.  There is evidence from the history, physical examination, and
> laboratory findings that the disturbance is a direct consequence of
> a general medical condition
> C.  The symptom causes clinically significant distress and
> impairment in social, occupational, and other important areas of
> functioning
> D.  With depressive features:  the predominant mood is depressed,
> but the full criteria are not met for a major depressive episode.

(R. 191).  Dr. Weiss found a GAF of 60 and suggested moderate impairment in

social and occupational functioning.  (R. 191).  He noted that she had not had

much mental health treatment and felt it could be beneficial for her to return to

treatment.  He felt her problems are likely to be long-term and suggested that

Plaintiff's prognosis was fair.  (R. 191).

On February 15, 2007, Plaintiff was examined at the Welborn Clinic by Dr.

Myers.  (R. 90-91).  It was reported that her anxiety was controlled.  (R. 90).

Specifically, Dr. Myers explained that Plaintiff was doing well on her current

medication.  (R. 91).

At the time of her hearing, the plaintiff was receiving a prescription for

Fluoxetine for depression and Buspirone for anxiety.  (R. 57).  There were no

other records of mental health treatment.

### 3.  Thrombophlebitis

Dr. Newman noted on June 27, 2001, that Plaintiff had recently (within

the last two weeks) been diagnosed with phlebitis.  (R. 147).  Plaintiff's

saphenous vein was indurated, inflamed, red, and tender from the upper medial left thigh all the way down to the ankle.  (R. 147-48).

Dr. Newman noted in October 2003 (R. 136), April 2004 (R. 135), and again in August 2004 (R. 132) that Plaintiff was on Relafen to help prevent recurrent phlebitis, "and that has worked very nicely . . . ." (R. 132).

### 4.  The Exam by Anne Butsch, M.D.

On March 5, 2005, the Indiana Disability Determination Division had Plaintiff examined by its own physician, Anne Butsch, M.D.  (R. 125-28).  Dr. Butsch noticed that Plaintiff had a normal gait that was not unsteady, lurching, or unpredictable.  (R. 126).  Plaintiff displayed an essentially normal range of motion in the upper and lower extremities and back.  (R. 127-28).  Dr. Butsch noted varicosities in the extremities and 2+/4 radial pulses bilaterally and 1-/4 dorsal pedalis and posterior tibial bilaterally.  Dr. Butsch provided the following RFC for Plaintiff:

> Claimant can lift and carry on an occasional basis no more than
> ten pounds.  On a frequent basis, she should lift and carry less
> than ten pounds.  Her maximum ability to stand and walk, with
> normal breaks, is limited to less than two hours, due to her
> phlebitis and varicose veins.  She can sit without limitation.
> Claimant must have the opportunity to shift at will from sitting or
> standing/walking.  She will need to be allowed to be near a
> restroom and allowed [to] go to the restroom at will, at
> unpredictable intervals.  Her ability to twist, stoop and crouch are
> limited but she should be able to do these occasionally.  Climbing
> stairs and ladders should be rare due to the fatigue she has
> secondary to the Crohn's disease.  Extremes of temperature and
> humidity should not be a problem.  Claimant should be able to do

gross and fine manipulation and feeling of objects without limitations.  Pushing/pulling and overhead reaching will be limited.

(R. 128).

### 5.  State Agency Review

State agency psychologists reviewed the records in February and June 2005 and opined that Plaintiff did not have a severe mental impairment.  (R. 199-200, 213-25).  The state agency doctors reviewed the record in March and May 2005 and opined that she could do a range of medium work including occasionally lifting 50 pounds and frequently lifting 25 pounds; sitting, standing, and walking about six hours each in an eight-hour workday; unlimited pushing and pulling; and occasional climbing, balancing, stooping, kneeling, crouching, and crawling.  (R. 202-12).

### III.  Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); see also *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997).  This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility.  *Richardson,* 402 U.S. at 399-400.  Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the

Commissioner. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

## IV.  Standard for Disability

In order to qualify for disability benefits under the Act, Plaintiff must establish that she suffers from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.* The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

## V.  The ALJ's Decision

The ALJ concluded that Plaintiff was insured for DIB through the date of the ALJ's decision.  Plaintiff also had not engaged in substantial gainful activity since the alleged onset date.  (R. 12).  The ALJ found that, in accordance with 20 C.F.R. § 404.1520, Plaintiff had one impairment that is classified as severe: Crohn's disease with remote anastomosis and bowel resection.  (*Id.*)  Plaintiff also had two non-severe impairments:  (1) depression; and (2) thrombophlebitis. (R. 13).  The ALJ concluded that these impairments did not meet or substantially equal any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 13).  Additionally, the ALJ opined that Plaintiff's allegations regarding the extent of her limitations were not fully credible.  (R. 15).  Consequently, the ALJ concluded that Plaintiff retained the RFC to lift and carry up to 50 pounds occasionally and 25 pounds frequently; sit, walk, or stand for up to six hours in an eight-hour workday; occasionally stoop, kneel, crouch, crawl, and climb stairs; and can never climb ladders, ropes, or scaffolds.  (R. 13).  The ALJ opined that Plaintiff retained the RFC to perform her past work.  (R. 18).  The ALJ concluded by finding that Plaintiff was not under a disability.  (*Id.*)

## VI.  Issues

Plaintiff has essentially raised three issues.  The issues are as follows:

1.  Whether the ALJ failed to give proper weight to the opinions of Plaintiff's treating/examining doctors.

2.   Whether the ALJ's failure to find that some of Plaintiff's impairments were severe was an error.

3.   Whether the ALJ's RFC assessment took into consideration all of Plaintiff's impairments.

**Issue 1:      Whether the ALJ failed to give proper weight to the opinions of Plaintiff's treating/examining doctors.**

Plaintiff first argues that the ALJ erred when he failed to give controlling weight to the opinions of Dr. Myers, Dr. Butsch, and Dr. Weiss.  Opinions of a treating physician are generally entitled to controlling weight.  *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000).  However, an ALJ may reject the opinion of a treating physician if it is based on a claimant's exaggerated subjective allegations, is internally inconsistent, or is inconsistent with other medical evidence in the record.  *Dixon v. Massanari,* 270 F.3d 1171, 1177-78 (7th Cir. 2001).  Additionally, 20 C.F.R. § 404.1527 provides guidance for how the opinions of treating and nontreating sources are to be evaluated and explains as follows:

> (d)  How we weigh medical opinions.  Regardless of its source, we will evaluate every medical opinion we receive.  Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
>> (1)  Examining relationship.  Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>>
>> (2)  Treatment relationship.  Generally, we give more weight to opinions from your treating sources, since

-11-

these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion.  We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

(i)  Length of the treatment relationship and the frequency of examination.  Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.  When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(ii)  Nature and extent of the treatment relationship.  Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion.  We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories.  For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her

opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(3)  Supportability.  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

(4)  Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5)  Specialization.  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

(6)  Other factors.  When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record

-13-

are relevant factors that we will consider in deciding the weight to give to a medical opinion.

*****

(f)  Opinions of nonexamining sources.  We consider all evidence from nonexamining sources to be opinion evidence.  When we consider the opinions of nonexamining sources, we apply the rules in paragraphs (a) through (e) of this section.  In addition, the following rules apply to State agency medical and psychological consultants, other program physicians and psychologists, and medical experts we consult in connection with administrative law judge hearings and Appeals Council review:

(1)  In claims adjudicated by the State agency, a State agency medical or psychological consultant (or a medical or psychological expert (as defined in § 405.5 of this chapter) in claims adjudicated under the procedures in part 405 of this chapter) will consider the evidence in your case record and make findings of fact about the medical issues, including, but not limited to, the existence and severity of your impairment(s), the existence and severity of your symptoms, whether your impairment(s) meets or equals the requirements for any impairment listed in appendix 1 to this subpart, and your residual functional capacity.  These administrative findings of fact are based on the evidence in your case record but are not themselves evidence at these steps.

20 C.F.R. § 404.1527.  In this case, Dr. Butsch and Dr. Weiss were not treating physicians, and their opinions were, therefore, not entitled to controlling weight.  Additionally, for the following reasons, the ALJ was free to reject each of the three doctors' opinions.

**1.  Dr. Myers**

Dr. Myers was one of Plaintiff's treating physicians.  However, his opinions were not entitled to controlling weight.  Dr. Myers completed a Physical Capacity Evaluation form in which he opined that Plaintiff could only stand and walk for

-14-

one hour in an eight-hour workday, could only stand consistently for less than 20 minutes, and could only walk consistently for less than ten minutes.  (R. 103).  However, there is simply no medical support in the record for these opinions.  The medical evidence demonstrates that Plaintiff's phlebitis was well controlled with medication.  (R. 132, 135-36).  In fact, Plaintiff had been diagnosed with phlebitis almost two years before the date she claimed disability, and there is no evidence in the medical records to suggest that her condition had worsened since that point.  Additionally, Plaintiff's range of motion examinations of her lower extremities were essentially normal.  (R. 127-28).  And, Plaintiff had no evidence of the edema that is normally associated with flebitis.  (R. 128).

Dr. Myers also opined that Plaintiff could lift less than ten pounds both frequently and occasionally.  Again, he provides no support in the way of objective medical tests for this opinion.  Plaintiffs' range of motion tests for her upper extremities were essentially normal, and she displayed normal grip strength.  (R. 127-28).

Additionally, Dr. Myers opined that Plaintiff would need to miss three or more days each month, would need to leave work early three or more days each month, would need more than one additional break each day due to her need for bathroom breaks, and would not be able to stay focused on three or more days each month.  (R. 103).  The ALJ did address the question of Plaintiff's need for bathroom breaks to the vocational expert at Plaintiff's hearing, and it was determined that Plaintiff could work even with the need for one five-minute

bathroom break every hour. (R. 257). However, as for the other limitations listed by Dr. Myers, he has provided no evidentiary support for them. As discussed above, the medical evidence suggests that Plaintiff's phlebitis and Crohn's disease are controlled with medication. The record also indicates that Plaintiff's Crohn's disease has resulted in two obstructions that required attention over a nearly seven-year medical history of the disease. There is no evidence to support a need for so many absences from work.

Given the lack of support for Dr. Myers' opinions, the ALJ was free to reject them. Therefore, the ALJ's failure to grant controlling weight to these opinions is not reversible error.

### 2. Dr. Butsch

Dr. Butsch examined Plaintiff one time on March 5, 2005. (R. 125-28). Based on this one-time examination, Dr. Butsch provided an RFC that included a limitation of no lifting or carrying more than ten pounds on a frequent or occasional basis, and a limitation of standing or walking for two hours due to phlebitis. As discussed above, there is no objective medical evidence to support such limitations. All medical evidence indicates that Plaintiff's phlebitis was well controlled with medication.

Additionally, Dr. Butsch opined that Plaintiff would need to go to the restroom at will at unpredictable intervals. However, the objective medical evidence suggests that in 2005 and 2006 Plaintiff was suffering from only two to

three loose stools a day or even had "well formed stools." (R. 112, 113). And, on January 25, 2007, Dr. Schneider noted that Plaintiff's bowel studies revealed much improvement of her Crohn's disease from 2005. (R. 98). Thus, the ALJ's hypothetical providing for one five-minute break per hour was appropriate, and no further limitations were supported by the objective medical evidence.

Finally, the ALJ did credit some of Dr. Butsch's findings and limited Plaintiff to occasional twisting, stooping, and crouching. Because most of Dr. Butsch's limitations are not supported by the objective medical evidence, and because Dr. Butsch was not a treating physician, the ALJ was free to reject these opinions.

### 3. Dr. Weiss

Dr. Weiss assessed Plaintiff with a GAF score of 60, which is on the borderline between mild and moderate impairment in social and occupational functioning. (R. 191). Plaintiff has not suggested how these findings would negatively affect her RFC. And, there was objective medical evidence from Dr. Myers in February 2007 suggesting that Plaintiff's mental problems were controlled with medication, and there was no evidence that Plaintiff sought more significant mental health treatment for over a two-year period between Dr. Weiss' examination and the ALJ's decision. Without more objective medical evidence of a mental health problem, the ALJ was not obligated to alter Plaintiff's RFC assessment based on Dr. Weiss' rather mild mental health findings.

**Issue 2:**   **Whether the ALJ's failure to find that some of Plaintiff's impairments were severe was an error.**

The ALJ found that at least one of Plaintiff's impairments, her Crohn's disease, was severe.  The ALJ then went on to analyze two additional non-severe impairments:  phlebitis and a mental health impairment.  There was nothing improper about the ALJ's treatment of Plaintiff's non-severe impairments in his written opinion.  As U.S. District Judge David Hamilton has indicated, "[a]s long as the ALJ proceeds beyond step two, as in this case, no reversible error could result solely from his failure to label a single impairment as 'severe.'  The ALJ's classification of an impairment as 'severe' or 'not severe' is largely irrelevant past step two.  What matters is that the ALJ considers the impact of all of the claimant's impairments – 'severe' and 'not severe' – on her ability to work." *Gordon v. Astrue,* 2007 WL 4150328 at *7 (S.D. Ind. 2007).  In this case, the ALJ analyzed Plaintiff's phlebitis and mental impairment and concluded that they were well controlled with medication and that they did not affect Plaintiff's RFC.

**Issue 3:**   **Whether the ALJ's RFC assessment took into consideration all of Plaintiff's impairments.**

In this case, the ALJ found that Plaintiff suffers from the severe impairment of Crohn's disease.  The ALJ provided an RFC assessment that accounted for Plaintiff's need for bathroom breaks.  Based on this RFC assessment, the ALJ concluded that Plaintiff could perform her past relevant

-18-

work at K-Mart.  The ALJ did not incorporate the findings concerning her

phlebitis or mental impairments into his RFC assessment.

The court, having examined the objective medical evidence, concludes that

the ALJ's decision was supported by substantial medical evidence.  There was

evidence in the record that Plaintiff was not demonstrating edema or other

effects to her lower extremities, and that her phlebitis was well controlled with

medication.  Additionally, there was medical evidence that Plaintiff's mental

impairment was not severe, that it was controlled with medication, and that

Plaintiff was not seeking significant mental health treatment.  Therefore, the ALJ

was warranted in excluding Plaintiff's phlebitis and mental health impairment

from his RFC assessment.

## VII.  Conclusion

The ALJ was not required to accept the opinions of Dr. Weiss, Dr. Butsch,

and Dr. Myers that were not supported by objective medical evidence, there was

no error in failing to find Plaintiff's phlebitis or mental impairment to be severe,

and the ALJ's RFC assessment was supported by substantial evidence.  The final

decision of the Commissioner is, therefore, **AFFIRMED**.

**SO ORDERED** the 23rd day of March, 2009.

_____
WILLIAM G. HUSSMANN, JR.
Magistrate Judge

-19-

**<u>Electronic copies to</u>:**

J. Michael Woods
WOODS & WOODS
mwoods@woodslawyers.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov